RACHEL FRISBEE v. THE TOWN OF MARSHALL.

(Decided May 3, 1898).

*Action for Trespass—Trespass on Possession—Evidence —Damages.*

1. Where, in the trial of an action for trespass on land to which plaintiff's deceased husband had title but in which dower had not been allotted or sued for, the plaintiff offered to show that she had been in possession, cultivating and paying taxes on the land; *Held,* that it was error to exclude the evidence.

2. An action of trespass against a wrong doer is a possessory remedy founded merely on the possession and it is not necessary that the title to the land should come into question; hence, it was error, in the trial of an action for trespass by a widow, to whom dower had not been allotted in her husband's land, to instruct the jury that the burden was on her to show that she was owner of the land.

3. Damages in an action for trespass on land in possession of plaintiff must be limited to such injuries to the possession as diminish its profits and uses, considering the damages after the action commenced so far as they resulted from the original trespass.

MONTGOMERY, J., dissents.

CIVIL ACTION tried before *Brown, J.*, and a jury at Spring Term, 1897, of MADISON Superior Court. The facts appear in the opinion. There was a verdict for the defendant and from the judgment thereon the plaintiff appealed.

*Mr. W. W. Zachary* for plaintiff (appellant).
*Mr. J. M. Gudger, Jr.*, for defendant.

FAIRCLOTH, C. J.: From the confused record in this case we have had some difficulty in ascertaining the facts. As we understand them they are as follows. (1) No summons is found in the transcript, but we assume that it issued before November Term, 1892, when the original complaint was filed, alleging that defendant, before and after May 1, 1890, appropriated plaintiff's land for township purposes, and pulled down plaintiff's fence, trees, etc. Answer filed at August Term, 1894, denies the allegations.

Amended complaint filed at Spring Term, 1897, alleges that, between May 1, 1890, and the bringing of this action, defendant pulled down a rock wall on plaintiff's land, which protected a house and store from the overflow of Frisbee branch, and that by such removal of wall, and by negligent obstruction of said branch at the time

mentioned, the water was turned out of its natural course on to plaintiff's land and damaged the plaintiff's premises, all of which was denied in the second answer.

(2) That Frisbee branch separated two tracts of land; that plaintiff's husband had a recorded deed for the tract on the North side, and that plaintiff resides on the tract on the South side of the branch which is not covered by said deed.

The court submitted the issues (1) "Did the defendant's agents wrongfully trespass upon and damage a certain tract of land on the Northwest side of Frisbee branch, the property of the plaintiffs?" Ans. No. (3) "Did the defendants wrongfully trespass upon and damage a certain tract of land on *Southeast* side of Frisbee branch, the property of the plaintiff?" Ans. No. It was admitted that title was out of the State. There was no plea of *liberum tenementum*, sole seized, nor any plea of title or possession in the defendant.

Upon the first issue plaintiff offered evidence tending to prove: That she was married to Elza Frisbee, who died in 1865, leaving three children—Malinda, Lafayette and John Frisbee. Lafayette died without heirs; Malinda and John resided with their mother upon the land referred to in 3rd issue, which is contiguous to the land referred to in 1st issue, being divided by Frisbee's branch. That as to land on north side of said branch referred to in 1st issue plaintiff testified that during her husband's life she gave one NcNew the money to pay for same, and he brought back to her the following deed, to-wit: a deed in fee simple from I. B. Sawyer, Clerk and Master in Equity Buncombe county, to Elza Frisbee, dated 1862. The said deed covers the land referred to in issue No. 1, and has long since been duly recorded. That said money was her own property. That

after her husband's death she removed to the land on south-east side of said branch referred to in issue 3, and resided there from 1865 to this date; that she took possession of the tract referred to in issue No. 1, and had cultivated and paid taxes on it and been in possession of it ever since; that her daughter, Malinda, has lived with her "off and on" all the time. That the plaintiff had never had any dower set apart to her and had never brought suit for dower, nor had she sued her children to have them declared trustees to her use for said land.

Malinda Frisbee testified: That she had never had anything to do with the land; that she supposed it was her father's land, but that her mother had full control of it, and she had not set up any claim so far as she was concerned.

Under the 4th issue relating to damage to the land on southeast side of the branch the plaintiff offered to prove that about a year before suit brought and complaint filed in this cause a small store house was washed away by a freshet in Frisbee branch, and that such damage was occasioned by a removal of certain rocks off the land of plaintiff by defendant's agents.

Objected to on ground that such damage had not accrued at commencement of this action. Sustained and evidence excluded. Plaintiff excepted.

His Honor told the jury they might consider each tract separately, that it is admitted that the deed to Elsie Frisbee, husband of plaintiff, covered the tract on the North side of the branch and does not cover the tract on the South side.

The Court instructed the jury that the burden of proof was on the plaintiff to show that she is the owner of the tract referred to in first issue, before she can recover damages for any trespass thereon; that the

question of a resulting trust could not be determined in
this action; that when no dower has been set apart
the possession of the widow is the possession of the heir
at law; that the legal title is in the heirs in this case
who are not parties to this action, and directed the jury
to answer the first issue "No." We think this instruc-
tion and the rejection of plaintiff's evidence was error.
The evidence was intended and tended to show that the
plaintiff was in possession of both tracts with her chil-
dren and that she exercised control over each tract. We
think that his Honor correctly held that the question of
a resulting trust could not be disposed of in the present
state of this case. This is an action of trespass. The
error was in holding that plaintiff could not recover be-
cause, upon the facts, the title was in the heirs of the
deceased husband and of course not in the plaintiff. In
an action of ejectment the plaintiff must show title. In
trespass *q. c. f.* the plaintiff need only show possession
against a stranger to the title or possession. He is a
*tort-feasor.* What constitutes possession? "When one
settles upon land by himself or tenants and continues
that possession, builds a house, *or* clears the land and
cultivates it, his claim then becomes notorious and gives
fair notice to the adverse cliamant to look to his title."
*Andrews* v. *Mulford*, 1 Haywood, 311. "Possession of
land is denoted by the exercise of acts of dominion over
it in making the ordinary profits of which it is suscep-
tible in its present state, such acts to be so repeated as
to show that they are done in the character of owner,
and not of an occasional trespasser." *Williams* v.
*Buchanan*, 23 N. C., 535. "Every unwarrantable entry
upon a peaceable possession is a trespass." *Wells* v.
*Howell*, 19 Johns, 385. "If lands are occupied by a
tenant, he and not the lessor must bring trespass against

a stranger for unlawful disturbance of the possession."
*Campbell* v. *Arnold*, 1 Johns, 511. "Whoever is in
possession may maintain an action of trespass against a
wrong doer to his possession, because it is a possessory
remedy founded merely on the possession and it is not
necessary that the right should come in question."
(Taylor, C. J.) "Possession alone is sufficient to maintain
trespass against a wrong doer. And it is consistent
with first principles, and in fact would be strange if it
were not so; for wretched would be the policy which
required the title to be shown in every instance where
the peaceable possession was disturbed by an intruder
who had no right. It would tend to broils and quarrels
and the possessor would resort to force to defend his
possession if the law afforded him no redress." (Hen-
derson, J.) *Myrick* v. *Bishop*, 8 N. C., 485.

The above principle has been uniformally followed by
this Court. The evidence offered tended to show that
the plaintiff has for a long time been in control, and ex-
ercising ownership over each tract, by notorious acts,
in the presence of the heirs of her husband. We think
it improper to enlarge on the question of damages until
the evidence has been heard, except to say that they
must be limited to such injury to the possession as
diminishes her profit and uses, and not extended to any
injury to the free-hold. The damages occurring after
the action commenced must be taken into account, so
far as they were the result of the original trespass.
They were the consequence of the original wrongful
act. If the heirs are advised to become parties to this
action they can do so by permission of the Superior
Court.                                              Error.

MONTGOMERY, J., dissenting: I do not concur in the

conclusion of the Court.  The complaint was for dam-
ages to the freehold and not to the plaintiff's right of
possession.