NORTH CAROLINA BAPTIST HOSPITAL, PLAINTIFF v. NOVANT HEALTH, INC. AND FORSYTH MEMORIAL HOSPITAL, INC. D/B/A FORSYTH MEDICAL CENTER, DEFENDANTS

No. COA08-747

(Filed 17 March 2009)

**Hospitals and Other Medical Facilities— certificate of need— noncompetitive application—violation of Settlement Agreement—injunction**

The trial court did not err by granting a preliminary injunction preventing defendant hospital from challenging or opposing plaintiff hospital's application for a certificate of need (CON) to build a medical facility in violation of a Settlement Agreement providing that the two hospitals would not challenge each other's future noncompetitive CON applications where plaintiff's present CON application is noncompetitive because defendant did not file an application for a competing CON in the same review period, and plaintiff showed that it would suffer immediate or irreparable harm if defendant is permitted to challenge its present CON application in that the parties agreed in their Settlement Agreement that a breach thereof would result in irreparable harm requiring injunctive relief.

Appeal by defendants from judgment entered 25 April 2008 by Judge Mark E. Klass in Davie County Superior Court. Heard in the Court of Appeals 20 November 2008.

*Kilpatrick Stockton, LLP, by James H. Kelly, Jr., Adam H. Charnes, and Richard D. Dietz, for plaintiff-appellee.*

*Martin & Van Hoy, LLP, by Henry P. Van Hoy, II, for Amici Curiae Davie County and the Towns of Mocksville, Bermuda Run, and Cooleemee.*

*Nelson Mullins Riley & Scarborough, LLP, by Noah H. Huffstetler, III, Denise M. Gunter, Wallace C. Hollowell, III, and Elizabeth B. Frock, for defendants-appellants.*

STEELMAN, Judge.

Where the trial court correctly concluded that plaintiff had shown a likelihood of success on the merits of its claim that defendants breached the parties' Agreement, and that plaintiff would suffer

immediate and irreparable injury if a preliminary injunction were not entered, the court did not err in issuing the preliminary injunction.

## I. Factual and Procedural Background

Plaintiff-appellee North Carolina Baptist Hospital ("Baptist") and defendants-appellants Novant Health, Inc. and Forsyth Memorial Hospital, Inc. (collectively referred to as "Novant") are major medical providers in the Piedmont Triad area of North Carolina.

Under North Carolina state law, a healthcare provider must obtain a Certificate of Need ("CON") from the State Department of Health and Human Services ("DHHS") prior to expanding or replacing its existing medical services. *See* N.C. Gen. Stat. §§ 131E-175, *et seq.* (2007). When a provider applies for a CON, competitors are permitted to submit comments opposing the application and seek to intervene in the administrative review process.

Under the CON statute, DHHS is required to establish specific review periods and filing deadlines for CON applications. *See* N.C. Gen. Stat. § 131E-182(a) (2007). DHHS must review competitive applications filed during the same review period at the same time. *See id.* Applications are considered competitive "if they, in whole or in part, are for the same or similar services and the agency determines that the approval of one or more of the applications may result in the denial of another application reviewed in the same review period." 10A N.C. Admin. Code § 14C.0202(f) (2008). When DHHS determines that two applications are "competitive," it sends official notice to the respective parties.

Baptist and Novant provide similar medical services to the citizens of Forsyth, Davie, Stokes, Yadkin, Davidson, Iredell, Surry, or Wilkes Counties and the surrounding areas. Effective 3 July 2006, Baptist and Novant entered into a Settlement Agreement ("Agreement") in order to resolve a number of disputes pending between them involving CON applications and to provide a mechanism for resolution of future disputes "in a way that enables the parties to focus their respective efforts and energies on providing vital health care services to the citizens . . ." Specifically, they agreed "not to challenge or oppose in any way" the following projects: (1) 50 bed satellite hospital in Kernersville (Novant); (2) Breast MRI Scanner (Novant); (3) Addition of 51 general acute care beds (Baptist); (4) Extremity MRI (Baptist); and (5) ED/ICU Tower (Baptist). The Agreement further provided that Baptist and Novant would not challenge each other's

**N.C. BAPTIST HOSP. v. NOVANT HEALTH, INC.**

[195 N.C. App. 721 (2009)]

future noncompetitive CON applications, but would remain free to challenge each other's competitive applications.

On 17 September 2007, both Baptist and Novant filed CON applications with DHHS. Baptist sought to replace the Davie County Hospital with a new eighty-one-bed hospital to be located in Bermuda Run ("Davie 1"). Novant sought to relocate beds from two of its hospitals in Winston-Salem to establish a new Medical Park Clemmons Hospital in Clemmons ("Clemmons 1"). Although the projects were located in different counties, the proposed locations were only four miles apart. DHHS determined that the applications were competitive, and each party challenged and opposed the other party's 17 September application, as permitted by the Agreement. Both applications were denied by DHHS on 27 February 2008, and both parties appealed the denial of their respective applications.

On 17 March 2008, Baptist filed two new applications, which were reviewed during the 1 April 2008 review period ("Davie 2" and "Davie 3"). The Davie 2 application was for a fifty-bed replacement hospital in Davie County. The Davie 3 application, which included obstetrics services, was withdrawn by Baptist on 24 March 2008. Novant did not file a CON application during this review period. DHHS determined that Baptist's application was noncompetitive. Baptist requested that, pursuant to the terms of the Agreement, Novant submit a no-contest letter to DHHS, stating that it would not challenge the Davie 2 application. Novant refused to submit this letter and instead informed Baptist that it intended to challenge and oppose Baptist's application. Baptist brought an action in Davie County Superior Court against Novant alleging that Novant was in breach of the Agreement. As a portion of the relief sought in this action, Baptist requested a preliminary injunction to enjoin Novant from challenging the Davie 2 application. Following a hearing on 22 April 2008, the trial court granted Baptist a preliminary injunction prohibiting Novant from challenging Davie 2 pending a trial on the merits. Novant appealed and filed a petition for writ of *supersedeas* and motion for temporary stay in the Court of Appeals, seeking to stay the trial court's 25 April order. This Court allowed Novant's petition for writ of *supersedeas* and stayed the trial court's preliminary injunction on 1 May 2008. Baptist appealed this stay by filing a petition for writ of *certiorari* with the North Carolina Supreme Court. This petition was denied on 13 May 2008.

On 28 August 2008, DHHS conditionally approved Davie 2.

## II.  Preliminary Injunction

In its sole argument on appeal, Novant contends that the trial court erred by granting a preliminary injunction preventing it from challenging or opposing Baptist's 17 March 2008 CON application. We disagree.

### Standard of Review—Preliminary Injunction

A preliminary injunction is an interlocutory injunction which restrains a party pending trial on the merits. *A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983); N.C. Gen. Stat. § 1A-1, Rule 65 (2007). A preliminary injunction will be granted

(1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*A.E.P. Industries* at 401, 302 S.E.2d at 759-60 (quotation and citations omitted, emphasis in original). "[O]n appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *Id.* at 402, 302 S.E.2d at 760 (citations omitted).

### A.  Likelihood of Success on the Merits

Novant first contends that the preliminary injunction was improperly granted on the grounds that Baptist did not show that it was likely to succeed on the merits of its claim that Novant breached the Agreement.

### Definition of "Competitive Application"

The central issue in this case is the interpretation of the definition of "competitive applications" in the parties' Agreement, which reads as follows:

"Competitive Applications" shall mean two or more Certificate of Need applications by the parties to this Agreement or their Affiliates, that, in whole or in part, are for the same or similar equipment, facilities or services and with respect to which the North Carolina Department of Health and Human Services determines that the approval of one or more of the applications may result in the denial of the other party's application *received in the same review period.* (emphasis added)

**N.C. BAPTIST HOSP. v. NOVANT HEALTH, INC.**

[195 N.C. App. 721 (2009)]

The definition adopted by DHHS in its agency regulations provides that "[a]pplications are competitive if they, in whole or in part, are for the same or similar services and the agency determines that the approval of one or more of the applications may result in the denial of another application reviewed in the same review period." 10A N.C. Admin. Code § 14C.0202(f) (2008).

Baptist contends that the definition of competitive application contained in the parties' Agreement is substantively identical to the definition adopted by DHHS. Baptist further contends that the correct interpretation of these two definitions is that, in order to be considered competitive, two CON applications must be (1) filed in the same review period and (2) determined by DHHS to be competitive. Baptist argues that, since Novant did not file an application during the 1 April 2008 review period, and since DHHS has determined Davie 2 to be noncompetitive with any other application, Davie 2 does not meet the definition of competitive application.

Novant contends that the proper interpretation of the parties' definition in the Agreement is one by which, if any of the applications filed by the parties at any time have been determined to be competitive, then all of the applications for the "same or similar equipment, facilities or services" are to be competitive. Under this interpretation, Novant asserts that Davie 2 is competitive with its Clemmons 1 application, because the two applications are for the same or similar services. Novant asserts that there is no requirement that the applications for the same or similar services be filed in the same review period.

We hold that the clear and unequivocal language contained in the Agreement provided that, for applications to be competitive, they must be "received in the same review period." We decline Novant's request that we disregard this provision in order to construe the Agreement in the manner preferred by Novant. *See McCain v. Ins. Co.*, 190 N.C. 549, 551, 130 S.E. 186, 187 (1925) ("Rules of construction are only aids in interpreting contracts that are either ambiguous or not clearly plain in meaning, either from the terms of the contract itself, or from the facts to which it is to be applied."). Novant did not file an application in the same review period as Baptist filed Davie 2, and DHHS determined Davie 2 to be a noncompetitive application. Since Davie 2 was not a competitive application, Novant was barred from opposing it. Thus, the trial court correctly concluded that there was a likelihood that Novant breached the Agreement by refusing to submit a no-contest letter to DHHS, in violation of the Agreement.

People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Blaylock Grading Co., LLP v. Smith*, 189 N.C. App. 508, 511, 658 S.E.2d 680, 682 (2008) (quoting *Gas House, Inc. v. Southern Bell Telephone & Telegraph Company*, 289 N.C. 175, 182, 221 S.E.2d 499, 504 (1976), *overruled on other grounds by State ex. rel. Utils. Comm'n v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983)).

We further note that the parties to this agreement are not neophytes in the area of healthcare law. Our courts are loath to intervene in contractual relationships based upon public policy considerations when the parties "are sophisticated, professional parties who conducted business at arms' length, and the 'result' of the contract does not elicit a 'profound sense of injustice.'" *Blaylock* at 511, 658 S.E.2d at 683 (quotation omitted).

### B. Irreparable Harm to Baptist

Novant next contends that the preliminary injunction was improperly granted on the grounds that Baptist did not show that it would suffer immediate or irreparable harm if Novant was permitted to challenge its Davie 2 application.

The Agreement provides that "[e]ach party hereto acknowledges that it has no adequate means to protect its rights under this Settlement Agreement other than by securing an injunction (a court order prohibiting a party from violating this Settlement Agreement)."

This question is controlled by the Supreme Court's holding in *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983). In *A.E.P. Industries*, the contract at issue contained nearly identical language to the language used in the parties' Agreement. The Supreme Court held that the contractual statement was "evidence of the inadequacy of money damages" and was thus suffi-

cient to show "irreparable injury." *Id.* at 406-07, 302 S.E.2d at 762-63. The Court further held that

> where the primary ultimate remedy sought is an injunction; where the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff; where no "legal" (as opposed to equitable) remedy will suffice; and where the decision to grant or deny a preliminary injunction in effect results in a determination on the merits, plaintiff has made a showing that the issuance of a preliminary injunction is necessary for the protection of its rights during the course of litigation.

*Id.* at 410, 302 S.E.2d at 764.

In the instant case, the parties agreed in the Agreement that a breach would result in irreparable harm requiring injunctive relief. Moreover, under North Carolina law, the injury Baptist would suffer if Novant is permitted to oppose the Davie 2 application "is one to which the complainant should not be required to submit or the other party permitted to inflict[.]" *Barrier v. Troutman*, 231 N.C. 47, 50, 55 S.E.2d 923, 925 (1949).

We hold that the trial court correctly concluded that Baptist would suffer immediate and irreparable injury if Novant were permitted to oppose Baptist's CON application.

The writ of *supersedeas* is dissolved, and the preliminary injunction is reinstated.

AFFIRMED.

Judges CALABRIA and STROUD concur.